## C. v. C.

*L. Comanor*, for plaintiff.

MacNeille, P. J., May 17, 1956.—In his complaint the husband-plaintiff alleges the wife's adultery as the ground of divorce. The master, after a careful review of the testimony and the relevant authorities, recommended that the divorce be granted. Though no appearance has been entered for defendant and no defense presented, and no exceptions have been filed, because of the unusual factual background of the case and the serious nature of the charge and its legal implications, we feel that in approving the master's report and adopting his findings we should place on the record a brief statement of what we conceive to be the applicable principles of law.

The parties were married on April 14, 1951. They desired children, carried on the normal marital relationship and took no measures to prevent conception. In May of 1953, because of the wife's failure to conceive, they consulted a physician, who in turn referred the husband to a specialist in endocrinology. This specialist, eminent in his field and well qualified experientially, testified before the master that his findings showed the husband to be completely sterile though apparently otherwise sexually competent. Differences developed between the parties shortly thereafter, culminating in permanent separation about June 1, 1954. The wife gave birth to a child 11 months after the separation, on April 29, 1955. The birth of the child and the husband-plaintiff's sterility are relied on as evidence of the wife's adultery, in addition to her asserted admission to plaintiff that she had had relations with other men.

We need not concern ourselves with the rule which renders both husband and wife incompetent to testify

to nonaccess. Though that rule has been criticized frequently by courts and textbook writers as having no sound basis either in legal principle or in social policy, it is firmly implanted in the law of Pennsylvania by decisions dating back for more than a century. See Commonwealth v. Wentz, 1 Ashmead 269; Dennison v. Page 29 Pa. 420.

The master, therefore, properly disregarded the husband's testimony that he had no access to his wife for 11 months prior to the birth of the child. Plaintiff's case rests on his established total sterility, which renders the question of access or nonaccess immaterial.

The presumption of the legitimacy of a child born in wedlock is one of the strongest presumptions known to the law, but it could always be rebutted by clear and satisfactory evidence showing that the husband could not have been the father of the child. Sir Harris Nicolas, in his Treatise on the law of Adulterine Bastardy (London, 1836), quotes Bracton as adopting in the fullest sense the expression of the civil law "that he is the father whom the marriage proves to be so, and that the nuptials afford *prima facie* evidence of legitimacy; and he [Bracton] repeatedly says, that if a child 'be born of the wife,' it must be considered the child of the husband, until the contrary be proved. The exceptions", continues Sir Harris, "if not defined with clearness, may nevertheless be easily discovered; and though they occur in various parts of his work, they agree, with singular exactness, with each other. These exceptions consist simply of Impotency, whether permanent or temporary; and Non-Access, whether it arose from impotency or absence. . . .

"Upon the first of these causes of Bastardy, Impotency, little need be said. It has always been considered a sufficient ground for divorce; it is in some

cases a fact capable of demonstration; and if satisfactorily established by medical testimony, is the most certain and clearest proof that the husband is not the father of the child": Pages 9-10.

Like expressions are to be found in other early writers. In 7 C. J. 942, Bastards, §6, is the notation: "In an early English case it was held that, where a husband is geld so that it is apparent that he cannot by any possibility beget a child, if his wife has issue several years afterward, such issue will be a bastard, although it was begotten after marriage, since it is apparent that it cannot be legitimate. 4 Viner Abr. Bastard A-2, p. 216." Similarly, in 2 Coke Litt, 244a: "If the husband be within the foure seas, that is within the jurisdiction of the king of England, if the wife hath issue, no proofe is to be admitted to prove the childe a bastard, (*for in that case filiato non potest probari*) unlesse the husband hath an apparent impossibilitie of procreation; as if the husband be but eight yeers old, or under the age of procreation, such issue is bastard, albeit he be borne within marriage."

The doctrine that proof of the husband's impotency overcomes the presumption of legitimacy is found generally in the American cases (see State v. Broadway, 69 N. C. 411; Mink v. State, 60 Wis. 583; Foote v. State, 65 Tex. Cr. Rep. 368), and was repeated as dictum by our own Supreme Court in the recent case of Cairgle v. American Radiator and Standard Sanitary Corp., 366 Pa. 249, 255. We cannot in reason regard the legal effect of impotency as different in this connection from that of sterility.

With positive, dependable and uncontradicted evidence before us of the total and permanent sterility of the husband, it follows that the child born to defendant was not begotten by him and, therefore, defendant committed adultery, and plaintiff is entitled to a divorce a. v. m. on that ground.